# **Exhibit 16**

HUNTON

HUNTON ANDREWS KURTH LLP
60 STATE STREET
SUITE 2400
BOSTON, MASSACHUSETTS 02109

TEL 617 • 648 • 2800
FAX 617 • 443 • 5022

CHRISTOPHER J. CUNIO
DIRECT DIAL: 617 • 648 • 2743
EMAIL: ccunio@hunton.com

August 17, 2026

**Via Electronic Mail**

H.Q. Energy Services (U.S.) Inc.
75, René-Lévesque Boulevard West, 18th Floor
Montréal (Québec) Canada
H2Z 1A4
Attention: General Manager

Re: Notice of Dispute Pursuant to Section 11.1(a) of the Power Purchase Agreement between NSTAR Electric Company d/b/a Eversource Energy and H.Q. Energy Services (U.S.) Inc. ("HQUS") dated June 13, 2018, as Amended

Ladies and Gentlemen:

NSTAR Electric Company d/b/a Eversource Energy ("Eversource") hereby provides notice by and for Eversource in accordance with Section 11.1(a) of the above-referenced Agreement (the "PPA") of the dispute described below, and of the commencement of dispute resolution proceedings in accordance with that Section. Capitalized terms used but not otherwise defined herein have the meaning ascribed to them in the PPA.

I. <u>HQUS obligations under the PPAs</u>

As required by the Green Communities Act of 2008 and the Energy Diversity Act of 2016, Eversource, Massachusetts Electric Company and Nantucket Electric Company d/b/a National Grid, and Fitchburg Gas and Electric Light Company d/b/a Unitil (collectively, the "EDCs") each contracted with HQUS for its pro rata share of the firm, incremental delivery of 9.55 TWh of hydropower annually to the ISO-New England power grid, together with associated Environmental Attributes, at set prices over a 20-year term. In addition to the firm, incremental delivery obligations, the PPAs require HQUS and its affiliates, including Hydro-Québec Power Resources ("HQP") and Hydro-Québec TransÉnergie ("TransÉnergie"), to comply with "Good Utility Practice" and applicable regulatory requirements for the

HUNTON



performance and operation of the facilities under their respective control. The PPAs also provide that HQUS's parent, Hydro-Québec ("HQ"), guarantees HQUS's performance throughout the 20-year term. Moreover, TransÉnergie has adopted, and is required to comply with, its Open Access Transmission Tariff ("OATT"), which is substantively identical to the Federal Energy Regulatory Commission's ("FERC") pro forma OATT, whose core tenets include non-discriminatory and transparent operation.

Following execution of the PPAs, in highly contested regulatory proceedings before the Massachusetts Department of Public Utilities ("DPU"), HQUS repeatedly and emphatically represented that its obligations were "firm" (i.e., uninterruptible) and "incremental" (i.e., new obligations over Baseline Hydroelectric) and that, as a result, the PPAs would "act as a hedge against winter energy prices." HQUS further acknowledged that, if it failed to satisfy its contractual delivery obligations, it would be required to pay substantial cover damages to protect the EDCs' ratepayers from, among other benefits, seasonal price spikes. When project opponents appealed the DPU's decision approving the PPAs, the Massachusetts Supreme Judicial Court ("SJC") unanimously affirmed the DPU, citing the guaranteed nature of HQUS's delivery obligations, particularly during the winter months, and the availability of cover damages and other contractual remedies to ensure HQUS's performance. Moreover, HQUS subsequently represented to FERC that its contractual obligations under the PPAs are "firm" in its Electrical Quarterly Reports ("EQRs").

II. <u>HQUS's non-performance under the PPAs</u>

After just eight days of operation, HQUS violated the PPAs by interrupting service over all or parts of 13 days in the middle of the winter, from January 24 through 30 and February 6 through 9, 2026. These interruptions were implemented in a discriminatory and non-transparent manner in contravention of, among other requirements, the PPAs, Good Utility Practice, and the OATT. HQUS's conduct frustrates the fundamental purpose of the PPAs—to ensure the guaranteed, incremental delivery of clean energy during Massachusetts winters, thereby protecting local ratepayers from winter price spikes—and, undermines the basis for the DPU and SJC approvals, as well as HQUS's representations to FERC in its EQRs. In addition, the consequences extend well beyond local utility customers. As a result of HQUS's service interruptions, ISO New England was forced to bring higher-cost, higher-emitting oil-fired generation online to meet winter demand and maintain system reliability across the region.

III. <u>Invocation of cover damages and invoice netting per the PPAs</u>

On January 25, 2026, Eversource promptly notified HQUS of its failure to deliver and of Eversource's intent to invoke the cover damages under the PPA. By letter dated February 6, Eversource issued a statement for $20,166,731 in Cover Damages arising from the January

HUNTON



interruptions, calculated pursuant to the Section 4.3(a) of the PPA, and provided the details of its calculation. HQUS did not remit payment. By letter dated February 23, Eversource offset the entirety of HQUS's January invoice, totaling $8,742,838.23, pursuant to the PPA, and provided additional support for its calculation. By letter dated March 25, Eversource issued a further statement seeking $986,762 in Cover Damages for the February interruptions, again, providing the details of its calculation, and updated the total cover damages for January and February 2026 to $21,119,574. HQUS again failed to pay. Eversource then applied the outstanding cover-damages amounts for January and February 2026 against HQUS's February invoice and paid the remaining balance of $7,406,263.34.

IV. HQUS's Response

HQUS failed to provide the interruption notices required by the PPA. HQUS further rejected the cover-damages claims and, on May 15, issued an invoice purportedly due on June 4 for the full amounts of its January and February invoices, notwithstanding the unexcused service interruptions. HQUS contends that the interruptions resulted from "Reliability Curtailments" and therefore were excused as Force Majeure under Section 10.1 of the PPA. That position has no merit. Simply put, HQUS has not provided, and cannot provide, the information and documentation that Section 10.1 requires to substantiate the occurrence of events that would justify "Reliability Curtailments" or any other Force Majeure claim. Moreover, an element of HQUS's breach of the PPAs is the failure of HQP and TransÉnergie to perform consistent with Good Utility Practice and other applicable requirements. This includes the OATT, the implementation of which by TransÉnergie is a condition of HQUS's Market-Based Rate Tariff accepted by FERC. Further compounding its past contractual breaches, HQUS continues to interrupt service without excuse under the PPAs and has stated that it intends to continue doing so in the future, including, on account of Eversource's exercise of its contractual right to offset and net Cover Damages amounts.

V. Proposed Resolution

Please contact me immediately upon your receipt of this letter to set time(s) and date(s) for a further discussion toward resolution of this dispute. Please be advised that Eversource requires, among other things, an unconditional waiver and release of the HQUS's claims rejecting Eversource's entire cover damages amounts, as well as a written commitment and further assurances acceptable to Eversource that HQUS will honor its firm, incremental service obligations in the PPAs. Absent resolution along these lines, Eversource will seek relief in the forum(s) specified in the PPA after the expiration of 15 business days from the above date.

HUNTON



Sincerely,

Christopher J. Cunio

Christopher J. Cunio

cc: H.Q. Energy Services (U.S.) Inc.
75, René-Lévesque Boulevard West, 18th Floor
Montréal (Québec) Canada
H2Z 1A4
Attention: General Counsel and Vice President – Legal Affairs